PEOPLE v ALLEN

Docket No. 77-25. Submitted October 4, 1978, at Lansing.—Decided May 21, 1979.

Edward G. Allen was charged with and convicted of assault with intent to rob being armed and assault with intent to commit murder, Oakland Circuit Court, Robert L. Templin, J. Defendant was 15 years of age. The prosecutor had sought and had secured a waiver of jurisdiction from the probate court so that defendant might be tried as an adult in circuit court. Defendant challenged the waiver of jurisdiction by the probate court. Judge Templin held that the waiver was proper. The defendant appeals alleging 1) that the trial court erred in upholding the probate court's waiver of jurisdiction, 2) the trial court improperly allowed the prosecution to introduce evidence of acts by the defendant which did not result in arrest, charge or conviction, 3) that the trial court improperly allowed the admission of lay testimony as to the defendant's sanity, and 4) that the trial court erred in its instruction to the jury on the lesser included offenses and on the disposition of the defendant if he were found to be not guilty by reason of insanity. *Held:*

1. A probate court's hearing on waiver of jurisdiction over a juvenile criminal defendant is not a determination of guilt or innocence, but is a determination of whether the juvenile or adult criminal justice system will better serve the needs of the public and the defendant; consequently, a standard of proof less

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Courts § 104.
    42 Am Jur 2d, Infants § 22 *et seq.*
    47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children § 54.
[2] 5 Am Jur 2d, Appeal and Error § 798.
    21 Am Jur 2d, Criminal Law § 81 *et seq.*
    47 Am Jur 2d, Juvenile Courts and Delinquent Children §§ 4, 49.
[3] 31 Am Jur 2d, Expert and Opinion Evidence §§ 90, 92-94.
[4] 5 Am Jur 2d, Appeal and Error § 798.
    30 Am Jur 2d, Evidence §§ 973, 978-985.
[5, 6, 7] 75 Am Jur 2d, Trial §§ 876 *et seq.,* 923.
[8] 75 Am Jur 2d, Trial §§ 738-742, 923.

stringent than proof beyond a reasonable doubt may be used at such a hearing.

2. Testimony regarding acts by the defendant which were unlawful in nature, but which did not result in an arrest, charge or conviction, were properly admitted for the purpose of establishing intent and premeditation.

3. The testimony of the lay witnesses as to the manipulative nature of defendant was properly admitted for the purpose of rebutting the factual premise of an expert witness's opinion, and because the lay witnesses expressed no conclusions as to defendant's sanity.

4. The trial court properly instructed the jury as to the elements of armed robbery, since those elements were necessary to the instruction on the lesser included offense of attempted armed robbery.

5. The charge to the jury, when read as a whole, did not constitute an instruction to the jury that they could find defendant guilty of an attempted assault.

6. The charge to the jury, when read as a whole, did not direct the nature of the jury's consideration of lesser included offenses.

7. No error resulted from the trial court's *sua sponte* instruction as to the disposition of the defendant in case of a verdict of not guilty by reason of insanity because the instruction did not emphasize that the defendant could soon be released from custody and the instruction favored the defendant by implying that he would not be released.

Affirmed.

1. INFANTS — PROBATE COURT — JURISDICTION — WAIVER OF JURISDICTION — BURDEN OF PROOF.

A probate court's hearing on waiver of jurisdiction over a juvenile criminal defendant is not a determination of guilt or innocence, but is a determination of whether the juvenile or adult criminal justice system will better serve the needs of the public and the defendant; consequently, a standard of proof less stringent than proof beyond a reasonable doubt may be used at such a hearing (JCR 1969, 11).

2. INFANTS — JUVENILE PROCEEDINGS — ADULT PROCEEDINGS — EVIDENCE — INTENT — STATUTES.

The statutory prohibition against the use of evidence from juvenile proceedings in a subsequent adult criminal proceeding does not prohibit the prosecutor from inquiring as to acts of the juvenile which did not result in an arrest, charge or conviction

for the purpose of establishing intent and premeditation (MCL 712A.23; MSA 27.3178[598.23]).

3. WITNESSES — CRIMINAL LAW — LAY WITNESSES — DURATION OF OBSERVATION — INSANITY — REBUTTAL — CONCLUSIONS.

The briefness of the duration of the observations by lay witnesses of a defendant claiming insanity does not effect the admissibility of their testimony as to the manipulative nature of defendant where that testimony was for the purpose of rebutting the factual premise for an expert witness's opinion and where the lay witnesses expressed no conclusions as to the defendant's sanity.

4. CRIMINAL LAW — EVIDENCE — JUVENILE RECORD — HARMLESS ERROR.

A brief reference to facts suggesting that a defendant had a prior juvenile record, brought out by the prosecutor during examination of a rebuttal witness, is harmless error where a similar inference could be drawn from previous testimony brought out by defense counsel.

5. CRIMINAL LAW — INSTRUCTIONS TO JURY — ROBBERY ARMED — ASSAULT WITH INTENT TO ROB BEING ARMED.

No error resulted from the trial court's instructing the jury on the elements of armed robbery in a trial for assault with intent to rob while armed, because the elements of armed robbery were necessary to an instruction which was given on the lesser included offense of attempted armed robbery.

6. CRIMINAL LAW — INSTRUCTIONS TO JURY — ATTEMPTED ASSAULT — COMPROMISE VERDICT.

A charge to the jury, in a trial for assault with intent to commit murder and assault with intent to rob being armed, that they "may find him guilty of any other degree of the offense inferior to that charge or guilty of an attempt to commit such an offense" does not constitute reversible error on the basis that the jury was instructed to consider an attempted assault where: (1) one of the lesser included offenses is attempted armed robbery; (2) the elements of an attempted assault are not defined for the jury; (3) attempted assault is not included as one of the possible verdicts; and (4) defendant is found guilty of the charged offense, eliminating the possibility that there was a compromise verdict.

7. CRIMINAL LAW — INSTRUCTIONS TO JURY — LESSER INCLUDED OFFENSES.

Charging the jury that they could find a defendant guilty of a

lesser included offense if they found defendant not guilty of the charged offense was not reversible error where, when read in the context of the entire charge, the language was not directive in nature and the jury was specifically instructed to consider each possible verdict separately.

8. Criminal Law — Instructions to Jury — Insanity Defense — Disposition of Defendant.

An instruction to a jury regarding the disposition of a defendant in case of a verdict of not guilty by reason of insanity, given without a request by counsel or the jury, is not reversible error where the instruction did not emphasize that the defendant could soon be released from custody and the instruction favored the defendant by implying that he would not be released.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Walter S. Schwartz,* for defendant on appeal.

Before: V. J. Brennan, P.J., and Allen and P. F. O'Connell,* JJ.

P. F. O'Connell, J. Defendant, age 15, was charged with and convicted of the crimes of assault with intent to rob being armed contrary to MCL 750.89; MSA 28.284, and assault with intent to commit murder contrary to MCL 750.83; MSA 28.278. At the time these offenses occurred, defendant had a history of mental treatment and was a ward of the state. The prosecutor sought to have the probate court waive juvenile jurisdiction over defendant so that he could be tried as an adult in Oakland County Circuit Court. Following hearings held on August 12, September 2, and September 8,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

1975, the probate court judge waived jurisdiction and ordered defendant to be tried as an adult.

In circuit court, defendant challenged the waiver of jurisdiction of the probate court. He argued that there had been insufficient evidence produced at the waiver hearing to determine the best interest of defendant or of society, that no repetitive pat- tern of offenses was shown, and that defendant was denied due process of law. The court con- cluded, however, that because of the seriousness of the charge and the testimony given before the probate court, the probate judge did not abuse his discretion in waiving defendant to the jurisdiction of the circuit court.

Defendant's primary trial defense was one of insanity; and he called an expert psychiatric wit- ness. This doctor testified that defendant was suf- fering from "chronic paranoid schizophrenia" and stated that, although defendant knew the differ- ence between right and wrong, he committed the crime as a result of an irresistible impulse. On cross-examination, however, the prosecutor brought out the fact that the doctor's opinion was based primarily on his interview with defendant and a psychological test. The doctor denied that he was "conned" by defendant and opined that defen- dant was not manipulative or faking his condition.

Defendant also called his stepbrother, who had been with him on the day of the crime. During the cross-examination of this witness, the following exchange occurred:

"Q (By Mr. Bunting *[the prosecutor]):* Did you know where this gun came from?

"MR. CADIEUX *[defense counsel]:* Objection, your Honor, it is immaterial to the question of relevancy.

"THE COURT: Overruled. You may have an answer.

"THE WITNESS: Yes, I do.

"Q (By Mr. Bunting): Who got it?

"A We both did.

"Q Where?

"A From a house across the street from the house.

"Q How?

"A It was a breaking and entering.

"Q Who did it?

"A We both did.

"Q For the express purpose of getting a gun and cutting it down?

"A No.

"Q But you got it and cut it down?

"A I didn't get the gun.

"Q Edward Allen did?

"A Yes, I told him not to."

To rebut the defendant's expert psychiatric testimony that defendant was not manipulative, the prosecutor called two witnesses, Mr. Kim, a program manager at the Boy's Training School who supervised the staff, and Mr. McKie, a caseworker at the school, both of whom had substantial contact with defendant during his one and one-half year stay there. Defense counsel objected to their testimony on the basis that an inadequate foundation had been laid to allow lay witnesses to give an opinion as to defendant's sanity. Defense counsel also objected to introducing the foundation of facts before the jury on the grounds that the fact of his juvenile incarceration would prejudice the defendant. A separate record of their testimony was made, and the court overruled defendant's objection and permitted them to testify before the jury. Neither witness offered an opinion on defendant's sanity, but both testified that defendant was a manipulative person. Mr. Kim testified: "I'm employed with the State of Michigan Department of Social Services as program manager at the Boy's

Training School", and made a single reference to defendant's "truancy", but Mr. McKie, in response to defense counsel's question, indicated only that defendant was "in a placement of some type".

Following closing arguments and the denial of a defense motion for a directed verdict, the court gave the jury the final charge. During the instructions, the court said:

"If you find the defendant not guilty of the offense in the degree charged in the information, you may find him guilty of any other degree of the offense inferior to that charge or guilty of an attempt to commit such an offense."

The court then went on to instruct on the charged offense of assault with intent to commit murder, and its two lesser offenses of assault with intent to do great bodily harm less than murder and felonious assault. The court then instructed the jury on the charged offense of assault with intent to rob and steal while armed, and the lesser offense of attempted armed robbery. In the course of defining those two offenses, the trial court also defined the crime of armed robbery.

Furthermore, the court instructed the jury on the disposition of defendant if he was found not guilty by reason of insanity:

"If you find the defendant committed the act but was not criminally responsible at the time, then he is not guilty by reason of such lack of criminal responsibility. If you make such a decision the Defendant will be immediately committed to the custody of the Center for Psychiatry for a period not to exceed 60 days."

The court then reviewed the possible verdicts

and gave the jury a written form listing those verdicts, saying:

"Actually you must consider each charge separately, each of the five charges separately, and there are three possible verdicts for each charge. One, guilty; two, not guilty; and three, not guilty by reason of insanity. Consider each of these charges separately and determine as to each how you will find the Defendant and there is a place there to help you find him guilty, not guilty or not guilty by reason of insanity.

"I think with this being written down, the possible verdicts, you can make determination and make it a lot simpler for you."

At the end of the instructions, defense counsel stated that defendant was generally satisfied with the instructions (with only one exception not relevant here). Following deliberations, the jury returned a verdict of guilty on both of the charged offenses, and defendant was sentenced to a term of life imprisonment on the assault with intent to rob count and to a term of 40 to 60 years imprisonment on the assault with intent to commit murder count. It is from that order of conviction and sentence that defendant brings this appeal.

# I

## WAIVER TO CIRCUIT COURT

Defendant's first claim of error is that the trial court erred in upholding the probate court's waiver of jurisdiction over the defendant.

MCL 712A.4(4); MSA 27.3178(598.4)(4) sets the guidelines for waiver.

Here, the probate court's findings were as detailed, succinct and cogent as one could reasonably expect. The statutory criteria were rigidly adhered

to, and there is no question that the probate court's findings were more than adequate to support the waiver. *People v Schumacher,* 75 Mich App 505, 511-512; 256 NW2d 39 (1977).

## II

### Burden of Proof at a Waiver Hearing

The defendant asserts that the requirement of proof beyond a reasonable doubt as an element of due process has been held applicable to juvenile proceedings and cites the Federal case of *United States v Costanzo,* 395 F2d 441 (CA 4, 1968), *cert den* 393 US 883; 89 S Ct 189; 21 Ed 2d 157 (1968), as authority for the proposition that proof by a mere preponderance of the evidence was discarded for a determination of delinquency. He further asserts that the juvenile waiver standards created in the aftermath of *People v Fields,* 388 Mich 66; 199 NW2d 217 (1972), and approved in *People v Jackson,* 46 Mich App 764; 208 NW2d 526 (1973), reflect an intent on behalf of the Legislature and the Court that certain points be proven in any waiver of jurisdiction. We find the defendant's contention without merit.

The "probable cause" determination of phase I of a waiver hearing is similar to a preliminary examination. Phase II is designed to determine the best interests of the minor and the public. Unlike the determination of delinquency hearings, guilt or innocence is not determined at a waiver hearing. JCR 1969, 11, meets the now-settled requirements of procedural due process. *People v Rubin Williams,* 50 Mich App 270, 273-274; 213 NW2d 307 (1973).

In addition, a waiver hearing does not subject the child to loss of liberty because it is not a

determination of guilt or innocence, but rather, it is a determination of whether the juvenile or adult criminal justice system will better serve the needs of the public and the defendant. Consequently, the Federal authority relied upon by the defendant does not control here, and the waiver to circuit court was proper.

## III

### ADMISSIBILITY OF EVIDENCE OF CRIME NOT CHARGED

The defendant next asserts that the prosecutor, while questioning defendant's brother, deliberately attempted to elicit statements of defendant's prior illegal acts. He contends that the testimony was of a separate and distinct crime which had not been charged against the defendant and that the testimony was also inadmissible because it concerned a juvenile offense.

Although it is clear that testimony concerning juvenile proceedings are inadmissible against the defendant in a subsequent adult proceeding, MCL 712A.23; MSA 27.3178(598.23), the law does not prohibit the admission of the evidence in question. In fact, as defendant himself points out, it does not appear that any arrest, charge or conviction was obtained as a result of the alleged "breaking and entering" by which defendant obtained the gun used in the offense which occurred here.

Moreover, it is quite clear that the prosecutor's reason for asking these questions of defendant's brother was to establish the great length to which defendant went in preparing for his crime. Consequently, the evidence was admissible to establish intent and premeditation.

Moreover, as the people point out, the language "breaking and entering" was volunteered by the

witness and does not appear to have been anticipated by the prosecutor. Furthermore, the "breaking and entering" language was used only once, although later reference was made to defendant's obtaining the gun.

Finally, because defendant's defense was one of insanity and defense counsel later used defendant's brother's testimony in attempting to establish defendant's legal insanity, it would appear that any error which did occur in the admission of the testimony was harmless. Not only did defendant turn the testimony to his advantage, but also the testimony otherwise had no relevance to the question of insanity.

## IV

### Lay Testimony of Defendant's Sanity

The defendant argues that the trial court erred in admitting lay testimony concerning defendant's sanity because of the brief duration in which the defendant was observed. The defendant cites the case of *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969), as authority for the proposition that lay testimony as to sanity can be admitted only if a witness is shown to have had ample opportunity to observe the defendant's conduct and become acquainted with the person.

The lay testimony of Mr. Kim and Mr. McKie was introduced to rebut Dr. Short's testimony that defendant was not manipulative and had not "conned" him. The people properly argue that *Cole* involved lay testimony as to an accused's sanity and set down several foundational requirements before such evidence is admissible. Since no testimony as to sanity itself was given, but only testimony as to defendant's manipulative character,

*Cole, supra,* has no application here. Thus, the fact that Mr. McKie observed defendant for about a total of four hours is not crucial, although it should be pointed out that those four hours were divided into half hour monthly sessions with defendant, rather than a single three and one-half hour contact with the defendant subsequent to arrest which was involved in *People v Thompson,* 30 Mich App 142, 143; 186 NW2d 4 (1971).

Finally, the prosecutor did not attempt to introduce defendant's prior juvenile record. Defendant's claim here is based on Mr. Kim's testimony that he was associated with the Boy's Training School. That single reference did not bring out defendant's juvenile record, although it may have suggested to the jury that defendant had some problems with the law. Such an inference, however, was explicitly stated, before Mr. Kim gave his testimony, when Dr. Short testified that defendant "since the beginning of adolescence has come into trouble with the law-enforcement agencies on numerous occasions". Consequently, any error involved in Mr. Kim's testimony concerning his occupation was harmless because of Dr. Short's prior testimony.

## V

### IMPROPER INSTRUCTIONS

The defendant's next argument is that the Court erred in instructing the jury on armed robbery because defendant was charged with assault with intent to rob while armed and the waiver from probate court was based on that charge.

As the people point out, the trial court's instructions on armed robbery were necessary to the instruction on attempted armed robbery. Moreover, the reference to attempt was also directed at

the lesser included offense of attempted armed robbery, rather than attempts of the offenses charged, and therefore was proper in the instant case. Finally, the jury was never told that armed robbery was a possible verdict. Consequently, the court's instruction on the elements of armed robbery was not error.

It is claimed by the defendant that the court erred in giving an instruction which amounted to a charge of "attempted assault".

Defendant argues that there can be no such crime, *People v Richard Banks,* 51 Mich App 685; 216 NW2d 461 (1974). Upon review of the instruction as a whole, we find no error.

It is apparent from the context in which the statement was made that the trial judge was not instructing the jury to consider an attempted assault charge, but rather was trying to say that there are offenses lesser than the charged ones of which defendant could be convicted. In the instant case, one of those offenses was an attempt, attempted armed robbery. This is apparent not only from the fact that the complained-of instruction precedes the instruction on the elements of the various offenses, but also from the fact that the trial court never defined the elements of an attempted assault for the jury, and never included an attempted assault with intent to commit murder as one of the lesser offenses they could consider. It was never one of the five possible verdicts given to the jury.

Secondly, defendant suffered no manifest injustice, and thus his failure to object to the complained-of instruction precludes reversal. Defendant was convicted of the greater charged offense. Defendant argues that the trial court's instruction caused the possibility of a compromise verdict and

thus violated his right to due process. Clearly the jury compromised nothing in this case, since they found defendant guilty as charged.

## VI

### JURY'S CONSIDERATION OF BOTH THE CHARGED AND LESSER OFFENSES IN THEIR DELIBERATIONS

The defendant argues eloquently that the lower court's instructions as quoted above coerced and restricted the jury in its deliberations. This type of instruction has been, to say the least, troublesome for our trial and appellate courts. See *People v Ronald L Johnson,* 74 Mich App 250; 253 NW2d 722 (1977). Notwithstanding our admonitions to trial judges, starting with *People v Ray,* 43 Mich App 45; 204 NW2d 38 (1972), the problem persists.

We agree with the analysis as set forth in the people's brief:

"In examining claimed instructional errors, the charge as a whole must be considered. *People v Green,* 34 Mich App 149 [190 NW2d 686] (1971). In the present case, the complained-of instruction was given approximately in the middle of the charge, immediately before the trial court's instruction on the elements of the offenses charged in the information. Thereafter the trial court defined the elements of the charged and lesser offenses. Read in this context, and recognizing where it appears in the charge, it is clear that the instruction at issue was *introductory and not directive* in nature. The trial judge was not instructing the jury on the manner in which they were to proceed in their deliberations, but was indicating to them that the charged offenses they were about to be instructed on were not the only crimes that they had to consider, but that there were other, lesser included offenses that 'may' be found.

"In this regard, Appellant's reliance on *People v Ray,*

43 Mich App 45 [204 NW2d 38] (1972) and *People v Harmon,* 54 Mich App 393 [221 NW2d 176] (1974) is misplaced. In each of those cases the trial court specifically instructed the jurors on the manner in which they were to conduct their deliberations. The jury was told they had to unanimously acquit the defendant on the charged offense first before proceeding to the lesser offense.

\* \* \*

"This instruction specifically informed the jurors *not* to start with the principal offense first and work their way down, but rather to consider each possible verdict separately. Under these circumstances, the complained-of instruction, when read in the context of the entire charge, was not coercive or restrictive of the jury's consideration of the lesser offense.

\* \* \*

" 'Counsel cannot sit back and harbor error to be used as an appellate parachute in the event of jury failure.' *People v Brocato,* 17 Mich App 277 [169 NW2d 483] (1969).

Had Appellant thought there was the slightest problem, he could have objected and requested the court to clarify the matter. His failure to do so should preclude his raising the issue on appeal."

# VII

## DISPOSITION OF DEFENDANT

The defendant next contends that the trial court committed reversible error in instructing the jury, without the request of counsel or the jury, as to the disposition of the defendant in case of a verdict of not guilty by reason by insanity.

The thrust of defendant's argument is that the court's charge emphasized the possibility that the defendant would be released and, therefore, it prejudiced the defendant. Defendant bases his ar-

gument on the case of *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969), wherein the Supreme Court ruled that a trial judge should, upon request of defense counsel or the jury, instruct on the disposition of a defendant in the event of a verdict of not guilty by reason of insanity. The primary purpose of such an instruction is to insure that a defendant will not be found guilty because a jury might fear that the defendant will be set free if an insanity verdict is returned.

The disputed instruction in the case at bar did not emphasize to the jury that the defendant could soon be released from custody if a not guilty by reason of insanity verdict was returned. Rather, the instruction favored defendant by implying that he would not be released. Thus, the instruction is similar to one given by the trial court, and found not to be reversible error by this Court, in *People v Samuelson,* 75 Mich App 228; 254 NW2d 849 (1977).

Affirmed.