**Edward G. ALLEN,
Petitioner–Appellant,**

v.

**Robert REDMAN, Respondent–Appellee.**

**No. 86–2164.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 4, 1988.

Decided Oct. 6, 1988.

Rehearing and Rehearing En Banc
Denied Nov. 16, 1988.

Carl Ziemba, argued, Detroit, Mich., for petitioner-appellant.

Thomas A. Kulick, Asst. Atty. Gen., Corrections Div., Lansing, Mich., Edgar L. Church, Jr., argued, for respondent-appellee.

Before ENGEL, Chief Judge*,
RYAN, Circuit Judge, and EDWARDS,
Senior Circuit Judge.

RYAN, Circuit Judge.

The petitioner, Edward G. Allen, appeals from the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Allen challenges the sufficiency of the evidence of his sanity and the jury instructions regarding the sanity issue. The district court held, and we agree, that Allen is precluded from challenging the sufficiency of the evidence of sanity in a habeas corpus proceeding because sanity is not, under Michigan law, an element of the crimes of assault with intent to rob or assault with intent to murder. We also agree with the district court's determination that the jury instructions regarding insanity were not constitutionally infirm. We therefore affirm the district court's denial of habeas relief.

## I.

On September 14, 1976, Allen was convicted in a jury trial of assault with intent to commit robbery, Mich.Comp.Laws § 750.89, and assault with intent to commit murder, Mich.Comp.Laws § 750.83. The convictions were upheld by the Michigan Court of Appeals, *People v. Allen*, 90 Mich. App. 128, 282 N.W.2d 255 (1979), and, on April 10, 1984, after unsuccessful motions for relief in the trial court, delayed application for leave to appeal was denied by that court. On November 30, 1984, the Michigan Supreme Court denied leave to appeal. *People v. Allen*, 419 Mich. 959 (1984). A petition for writ of habeas corpus was then brought in the district court which conditionally granted the writ in a memorandum opinion. That opinion provided that the petition would be granted if the Michigan Supreme Court determined that sanity was an element of the prosecution's case in chief in a then pending rape and kidnapping case, *In re Certified Question: Duffy v. Foltz*, 425 Mich. 457, 390 N.W.2d 620 (1986). However, the Michigan Supreme Court held that sanity was not an element

of the crimes of rape and kidnapping. *Id.* In view of the Michigan court's decision, and because the additional grounds asserted in Allen's petition did not warrant habeas relief, the district court denied the petition by an order dated November 26, 1986. It is from this second opinion that Allen now appeals.

## II.

Allen's underlying convictions result from his involvement in an attempted robbery of a party store on July 14, 1975. Allen's stepbrother testified at the trial that a few days before the attempted robbery, the two of them had broken into a neighbor's house and stolen a shotgun. Thereafter, Allen, according to his own testimony, sawed off the barrels of the gun. On July 14, at approximately 8:30 p.m., Allen rode his bike to the party store and carried the gun with him in a pillowcase. Allen and his stepbrother both testified that Allen had been drinking gin a few hours earlier. At 8:55 p.m., Henry Corazza, a co-owner of the party store business, was loading a pop cooler in the store when he noticed that Allen had entered the store. Corazza stood up and saw Allen facing him and pointing a sawed-off shotgun at his head. Allen followed Corazza to the rear of the store and asked him to get out his car trunk key. Corazza was then commanded at gunpoint to go outside, open the car trunk, and get inside. After Corazza had been in the trunk for a few minutes, Allen let him out, commanding him to open the cash register. Allen then began to take Corazza back to the car. When a car passed by and Corazza noticed that Allen had dropped his gun from view, Corazza turned and took a swing at petitioner but missed. Allen stepped back and shot at Corazza, hitting him in the arm.

Allen started to run away but Corazza caught him. Due to a loss of blood, however, Corazza was unable to hold him. By that time, a number of people gathered at the scene. The police arrived and, with the assistance of a tracking dog, chased Allen

* The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1988.

into the woods but were unable to catch him. Allen arrived at his father's house at 11:00 p.m. that night. After noticing blood on his son's shirt, the father called the police and Allen was arrested.

At the trial, Allen's primary defense was insanity. Dr. Michael Short, a court-appointed psychiatrist, testified for the defense. Dr. Short had examined Allen for one and one-half hours on February 25, 1976. He administered the Minnesota Multi–Phasic Personality Inventory (MMPI) to test Allen, whose responses were scored by the Roach Psychiatric Service Institute. Allen also took an electroencephelogram (EEG), which failed to show any abnormality in his brain waves. Additionally, Dr. Short also relied on the psychological evaluations of three other doctors. Allen had a history of mental illness, and Dr. Short noted that Mellaril, a drug usually prescribed for schizophrenics, had been prescribed earlier for him.

Dr. Short testified that, in his opinion, Allen suffered from "chronic paranoid schizophrenia." Although Dr. Short believed Allen knew the difference between right and wrong, he also thought he was not capable of resisting an impulse. The essence of Dr. Short's testimony was that Allen was acting under an irresistible impulse[1] at the time of the attempted robbery.

The prosecution's theory with respect to the insanity defense was that Dr. Short had been "duped" by a manipulative patient. On cross-examination, Dr. Short testified that he did not find Allen manipulative and did not think he was "faking" schizophrenia. In rebuttal, the prosecution introduced the testimony of two lay witnesses to establish that Allen had a history of manipulative behavior.

Yong Wook Kim, the program manager at the Boys Training School, a division of the Michigan Department of Social Services, was called to testify, based on his almost daily contact with Allen during the one and one-half years preceding the attempted robbery. Kim described Allen as "manipulative and destructive." Michael James McKie, a caseworker for the Michigan Department of Social Services, described Allen as "manipulative." McKie's description was based on eight meetings with Allen between November 1974, and August 1975.

The jury did not accept Allen's insanity defense and found him guilty of assault with intent to commit robbery and assault with intent to commit murder. He unsuccessfully appealed the guilty verdict to the Michigan Court of Appeals, and the Michigan Supreme Court denied his request for leave to appeal. Thereafter, he filed his habeas corpus petition on grounds related to the sufficiency of the evidence of sanity, and the jury instructions relating to the insanity defense.

### III.

It is well-settled that the "Due Process Clause of the Fourteenth Amendment protects the defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 2786, 61 L.Ed. 2d 560 (1979) (quoting *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed. 2d 368 (1970)). The *Jackson* Court further limited the inquiry to sufficiency of the evidence of the *elements* of the crime:

> In short, *Winship* presupposes as an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to

---

1. At the time the crime was committed, the Michigan test to determine legal insanity was two-pronged. *People v. Savoie,* 419 Mich. 118, 123–24, 349 N.W.2d 139 (1984). "The salient elements of the Michigan test are: 1) whether the defendant knew what he was doing was wrong; and 2) if he did, did he have the power, the willpower, to resist doing the wrongful act?

The Michigan test encompasses not only a sudden overpowering, irresistible impulse but any situation or condition in which, 'the willpower' to resist, is insufficient to restrain commission of the wrongful act." *Id.* at 124, 349 N.W.2d 139 (quoting *People v. Martin,* 386 Mich. 407, 418, 192 N.W.2d 215 (1971), *cert. denied,* 408 U.S. 929, 92 S.Ct. 2505, 33 L.Ed.2d 342 (1972)).

convince a trier of fact beyond a reasonable doubt of the existence of every *element* of the offense.

*Id.* 443 U.S. at 316, 99 S.Ct. at 2787 (emphasis added). Thereafter, the Court stated that "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.[16]" *Id.* at 324, 99 S.Ct. at 2791. In footnote 16, the Court addressed the federalism concerns expressed by the respondents in that case as follows:

> The respondents have suggested that this constitutional standard would invite intrusion upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive *elements* of the criminal offense as defined by state law.

*Id.* at 324 n. 16, 99 S.Ct. at 2792 n. 16 (emphasis added). The question for us then is whether, in Michigan, when the defendant introduces evidence of insanity, proof of sanity becomes an element of the offense charged.

It is undisputed that under Michigan law, once the defense introduces some evidence of insanity, the prosecution bears the burden of proving sanity beyond a reasonable doubt. *People v. Murphy,* 416 Mich. 453, 463–64, 331 N.W.2d 152 (1982). Allen claims that it follows therefrom that sanity becomes an "element" of the charged offense for due process purposes once the burden-shifting evidence has been introduced. The state claims, however, that the mere acceptance of the burden of proof of the defendant's sanity, once the affirmative defense of insanity is raised, does not transform sanity into an element. The distinction is important because the Supreme Court, in *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), and this court in *Duffy v. Foltz,* 804 F.2d 50 (1986), have limited habeas corpus review to *elements* of the crime as defined by the state.

*Engle v. Isaac* involved, in part, a claim for habeas corpus relief based on insufficient evidence of the absence of self-defense. 456 U.S. at 119, 102 S.Ct. at 1567. The Sixth Circuit had determined that since Ohio designated the absence of self-defense as an element of the crimes involved, *In re Winship* and its progeny constitutionally required the prosecution to prove the absence of self-defense beyond a reasonable doubt. *Id.* (citing *Isaac v. Engle,* 646 F.2d 1129 (6th Cir.1980)). This assumption that "due process required the State 'to meet the burden that it chose to assume,'" *id.* at 1135, was rejected by the Supreme Court in the following portion of its decision:

> A careful review of our prior decisions reveals that this claim is without merit. Our opinions suggest that the prosecution's constitutional duty to negate affirmative defenses may depend, at least in part, on the manner in which the State defines the charged crime. *Compare Mullaney v. Wilbur,* [421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)], with *Patterson v. New York,* [432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)]. These decisions, however, do not suggest that whenever a State requires the prosecution to prove a particular circumstance beyond a reasonable doubt, it has invariably defined that circumstance as an element of the crime. A State may want to assume the burden of disproving an affirmative defense without also designating absence of the defense an element of the crime. The Due Process Clause does not mandate that when a State treats absence of an affirmative defense as an "element" of the crime for one purpose, it must do so for all purposes. The structure of Ohio's Code suggests simply that the State decided to assist defendants by requiring the prosecution to disprove certain affirmative defenses. Absent concrete evidence that the Ohio Legislature or courts understood § 2901.05(A) to go further than this, we decline to accept respondents' construction of state law. While they attempt to cast their first claim in constitutional terms, we believe that this claim does no more than suggest that the instructions

at respondents' trials may have violated state law.

456 U.S. at 120–21, 102 S.Ct. at 1567–68 (footnotes omitted). Thus, the apparent meaning of *Engle v. Isaac* is that a state may elect to carry the burden of proof with respect to a properly raised defense while insulating that portion of its case from habeas corpus review by expressly not designating the lack of the affirmative defense as an element of the crime. *See Duffy v. Foltz,* 804 F.2d 50, 54 (6th Cir.1986).

The Supreme Court has held that due process is not offended by requiring a criminal defendant to bear the burden of proof with respect to the defense of insanity. *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952) (cited in *Duffy v. Foltz,* 772 F.2d 1271 (6th Cir.1985)). If that were the situation under Michigan law, it is clear that no habeas review would be permissible. Therefore, it is permissible for the state of Michigan to ease the criminal defendant's burden by assuming the duty to prove the defendant's sanity after the defendant offers some evidence of insanity, without exposing itself to habeas review with respect to an affirmative defense it could constitutionally have required the defendant to prove. Additionally, in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the Supreme Court stated that "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here." *Id.* at 210, 97 S.Ct. at 2327.

Therefore, as a preliminary matter, it must be determined whether sanity is an element of either assault with intent to rob or assault with intent to murder. If, as the district court concluded, sanity is not an element of either of these crimes, habeas corpus review is precluded.

### A.

After this court decided that sanity was an element of the crimes of rape and kidnapping under Michigan law for due process purposes, *Duffy v. Foltz,* 772 F.2d 1271 (6th Cir.1985) (*Duffy I*), that very question was certified to the Michigan Supreme Court in connection with the state's petition for rehearing en banc. The question was answered by the Michigan Supreme Court as follows:

This matter comes before this Court pursuant to a question certified by the United States Court of Appeals for the Sixth Circuit. The question this Court has agreed to answer is whether sanity is an element of the crimes of rape and kidnapping as defined by Michigan law. We hold that sanity is not an element of these crimes and that insanity is a burden-shifting affirmative defense, placing the burden of going forward with evidence of insanity on the defendant. The defendant having done so, the burden of going forward with evidence of defendant's sanity beyond a reasonable doubt shifts to the prosecution.

*In re Certified Question: Duffy v. Foltz,* 425 Mich. 457, 458, 390 N.W.2d 620 (1986) (hereinafter *Duffy Certified Question*). Thereafter, this circuit's decision in *Duffy I* was vacated and a decision conforming to Michigan law was entered. *Duffy v. Foltz,* 804 F.2d 50 (6th Cir.1986) (*Duffy II*).

The district court's initial decision was that if the Michigan Supreme Court's decision in *Duffy: Certified Question* established that sanity was an element of rape and kidnapping, thus allowing the court to conduct habeas review, it would grant the petition based on insufficient evidence of sanity. However, since the Michigan Supreme Court's decision was to the contrary, the district court decided that sanity was likewise not an element of attempted robbery or attempted murder under Michigan law. Therefore, the district court determined it was precluded from reviewing the insufficiency of evidence ground and denied relief on that basis.

It is clear that if, in *Duffy II,* the Michigan Supreme Court had held that sanity is never an element of any crime, this court would be precluded from reviewing Allen's claim based on insufficient evidence of sanity. *Duffy II,* 804 F.2d at 54.

We recognize that, in interpreting its *Murphy* opinion, *supra,* upon which this panel had relied in its prior opinion, the Michigan court did not deal with that part of *Murphy* which appeared to hold that federal due process required proof of Murphy's sanity beyond a reasonable doubt as such is defined by *Jackson v. Virginia, supra.* However, *Engle v. Isaac, supra,* makes clear it is for the Michigan court to say what Michigan law *is* and that we are bound, for present purposes, by the Michigan court's interpretation of its law. Since under Michigan law Duffy's sanity was not and did not become an element of the crimes for which he was convicted, the claim that there was insufficient proof of sanity does not raise a federal constitutional issue.

*Id.* (emphasis in original).

Also, the *Duffy II* court was satisfied that the Michigan Supreme Court understood the question it was asked, and thus petitioner's argument to this effect has already been disposed of by this court.

It might be argued that the question as posed to the Michigan court by this court is not precisely the question that is before us now and that was decided by the prior panel opinion. That is to say, it could be argued that the question is not whether sanity is an element of these crimes as the crimes are defined by state law and as a general proposition, but rather is whether sanity becomes an element of the crimes under state law *after* evidence of insanity is introduced. However, the Michigan Supreme Court had the prior panel opinion before it and therefore was informed as to the precise question presented by this appeal. We are satisfied that the Michigan court understood and answered the question before this panel.

*Id.* (emphasis in original).

However, we are persuaded that the decision in *Duffy: Certified Question* is limited to the crimes of rape and kidnapping that were involved in that case. A review of the decision illustrates why. In determining whether the crimes of rape or kid-napping included sanity as an element, the Michigan Supreme Court looked specifically at the definitions, statutory and judicial, of the crimes, and found that neither of the offenses had been defined in a manner indicating that sanity was an element. *Duffy: Certified Question,* 425 Mich. at 461–63, 390 N.W.2d 620. In pertinent part, the court noted: "Nowhere within the statutory language defining [rape] is sanity stated as an element. Furthermore, this Court has never interpreted these statutes to include sanity as an element." *Id.* at 462, 390 N.W.2d 620. "Moreover, in *People v. Wesley,* 421 Mich. 375, 388–91, 365 N.W.2d 692 (1984), this Court construed the kidnapping statute, . . . and, in stating the elements of the conduct prohibited by the statute, we did not list sanity as an element. Neither in the specific language of the rape and kidnapping statutes, nor in judicial interpretation of these statutes, has sanity been included as an element." *Id.* 425 Mich. at 463, 390 N.W.2d 620. Therefore, we will follow the analytical path taken by the Michigan Supreme Court in *Duffy: Certified Question,* and examine the definitions of assault with intent to rob and assault with intent to murder to determine if sanity has been legislatively or judicially included as an element.

### B.

▮ Assault with intent to commit murder is statutorily defined in the following section:

Sec. 83. **ASSAULT WITH INTENT TO COMMIT MURDER:** Any person who shall assault another with intent to commit the crime of murder, shall be guilty of a felony....

Mich.Comp.Laws § 750.83. From this definition, it seems clear that sanity is not an element of assault with intent to murder. Sanity is nowhere mentioned in the definition of the crime and we find no case law indicating that it is an element of the offense. However, Allen asserts that sanity is an element of murder and therefore should be an element of assault with intent to murder. We do not think one follows

from the other as the two offenses are separate crimes with distinct definitions.

Assault with intent to rob is also statutorily defined:

> Sec. 89. **ASSAULT WITH INTENT TO ROB AND STEAL BEING ARMED—** Any person, being armed with a dangerous weapon, or any article used or fashioned in a manner to lead a person so assaulted reasonably to believe it to be a dangerous weapon, who shall assault another with intent to rob and steal shall be guilty of a felony....

Mich.Comp.Laws, § 750.89. Clearly, the language of this statute does not include sanity as an element of the offense. Likewise, we find no indication that sanity has been judicially declared an element. Thus, the district court properly denied Allen's claim for habeas relief based on insufficient evidence of sanity with respect to his conviction for assault with intent to rob.

## IV.

■ Allen objected to the trial court's jury charge regarding sanity on four grounds. "In reviewing the effect of jury instructions on the resulting conviction, a single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Thus, the issue on review is whether the instruction as a whole "so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. at 400. The burden of establishing that an erroneous jury instruction's prejudicial effect warrants a "collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1971). It is not enough to merely show that the instruction was incorrect. *Id.*

From our reading of the cases involving jury instructions, *Cupp v. Naughten*, *Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977), and *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), it appears that the language from *Cupp*, stating that the "resulting conviction violates due process," brings the analysis in this case back to whether sanity is an element of the crimes involved. Allen's jury instruction argument is simply an assertion that his conviction violates due process because the jury instructions led the jury to convict him without the state proving that he was sane beyond a reasonable doubt. However, since the due process protections of *In re Winship* are limited to elements of the crime, these objections must be dismissed for the reasons explained in Part III, *supra*. Even if the conviction were not based on proof of sanity beyond a reasonable doubt, the result would not be a violation of due process but merely a violation of Michigan law. The review of jury instructions in a habeas proceeding upon a state conviction is limited to purportedly constitutional infirmities rather than mere noncompliance with state law. Therefore, the district court's denial of habeas corpus relief based on the jury instructions regarding insanity was proper.

## V.

Because under Michigan law sanity is not an element of either assault with intent to murder or assault with intent to rob, we find that the petitioner's claims regarding the sufficiency of the evidence and the jury instructions with respect to these claims do not present cognizable constitutional grounds for habeas relief. Accordingly, we AFFIRM the district court's denial of Allen's request for a writ of habeas corpus.