THE STATE OF OHIO, APPELLEE, *v.* GALL, APPELLANT. ■
[Cite as State v. Gall (1980), 65 Ohio App. 2d 57.]

(Nos. 1102 and 1104—Decided March 26, 1980.)

*Mr. Michael DeWine,* prosecuting attorney, and *Mr. William F. Schenck,* for appellee.
*Messrs. Cox & Cox* and *Mr. David W. Cox,* for appellant.

MCBRIDE, P. J.   One notice of appeal was filed by counsel and one notice of appeal was filed by the defendant-appellant, Eugene W. Gall, *pro se.* These should have been assigned the same case number. For all practical purposes there is but one appeal.

By way of preliminary comment it is appropriate to point out the confusion created by reason of the failure of the appellee to identify and list its responses to errors assigned by appellant consistent with appellant's method of identification. The language of App. R. 16(B) requires that the brief of the appellee "shall conform" to the requirements for the brief of the appellant in subdivisions (A)(1) through (A)(4) of App. R. 16. Appellant listed ten errors numerically. Appellee responded with eleven "propositions of law" expressed in different language and identified alphabetically. If this were not enough, the eleven propositions are hopelessly mixed and

jumbled in an order of arrangement that is totally different than that presented in the appellant's assignments of error. App. R. 16 is designed as an aid to counsel and to the court. The failure to conform to appellant's system of presentation is a violation of the rule and provokes confusion of issues and rhetoric as well as unnecessary delay. If this were not a criminal case, the court would require that appellee's brief be resubmitted to conform to App. R. 16. Our consideration of the assignments will conform to appellant's identification system unless otherwise indicated.

The appellant was tried by jury on July 2, 1979, and convicted of several offenses, committed on April 3, 1978: rape and attempted rape of children and aggravated robbery.

At appellant's request he was permitted to act as his own counsel; however, the court appointed counsel to advise him through the trial and again later for the purpose of appeal. This form of dual representation on behalf of the appellant is apparent throughout the trial and on this appeal. The latter was handled by counsel appointed for the purpose of the appeal.

The weight of the evidence relating to the offenses is substantial and in part admitted by the appellant. In the interest of economy it is not necessary to repeat the history of the sordid events that took place. The facts will be discussed as necessary with each assignment of error as listed and numbered by the appellant.

*Assignment of Error No. 6.*

Because of its significance, first consideration is given to appellant's sixth assignment of error, which reads:

"The court erred in not instructing the jury as to the standard of proof to apply in determining whether the defendant was insane."

In his instructions the trial judge provided a definition of insanity and at the request of the jury this definition was repeated during deliberations without objection. From the language of the assignment and the arguments the question here is whether the burden of proof was properly placed on the issue of insanity.

Prior to January 1, 1974, the established rule in Ohio was that the defendant had the burden of going forward and of

establishing the defense of insanity and other affirmative defenses by a preponderance of the evidence. The new criminal code (Am. Sub. H. B. No. 511, 134 Ohio Laws 1866-2035) placed the burden of "going forward with the evidence of an affirmative defense" upon the accused. R. C. 2901.05(A). This statutory burden of going forward was expanded by the Supreme Court to include the burden of proof in *State* v. *Robinson* (1976), 47 Ohio St. 2d 103, in a decision decided July 21, 1976; however, the *Robinson* case was repudiated by the legislature by an amendment to R. C. 2901.05(A), effective November 1, 1978 (Am. Sub. H. B. No. 1168), which expressly readopted the long established rule that "the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused." Justice Corrigan, in the last paragraph of the dissent in *Robinson, supra,* at page 118, accurately predicted the confusion injected into the trial of affirmative defense cases which confusion encouraged the quick demise of *Robinson* law by the General Assembly.

The offenses in this case were committed on April 3, 1978, while the *Robinson* law was supreme, and prior to the amendment to R. C. 2901.05(A), effective November 1, 1978 (Am. Sub. H. B. No. 1168). The case was tried in 1979 after the effective date of the amendment.

While it may be argued that the amendment was a procedural change and constitutionally may be applied retroactively, resort to constitutional arguments is unnecessary under the Ohio statutes and the legislative history of Am. Sub. H. B. No. 511 (134 Ohio Laws 1866-2035). Under R. C. 1.48, "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." R. C. 2901.05(A) is a part of the general revision of the criminal law of Ohio. When these chapters and statutes were adopted, the General Assembly expressly provided for the transition in temporary legislation in Section 3 (134 Ohio Laws 2034) which provided that persons charged with offenses committed prior to the effective date be prosecuted under the law as it existed at the time the offense was committed.

If there be any doubt in this case as to the effect of R. C. 1.48, the question should be determined as specifically directed by the legislature in Section 3 and as generally expressed in

R. C. 1.48. This rationale appropriately represents the law of this state that an accused shall be prosecuted under the law as it existed when the offense was committed.

We turn to the question whether the trial court erred in its instructions on the burden of proof for insanity for an offense committed on April 3, 1978, at a time when *Robinson* was the law.

Prior to closing argument the trial judge struggled with the method of submitting the *Robinson* law to the jury—a new problem shared by all judges in Ohio. However, he unequivocally ruled that the state had the burden of proof on insanity.

Toward the close of final arguments the following took place:

"Mr. Schenck: Now, I didn't object to it when Mr. Berger was talking, but I don't believe you are going to hear Judge Kimmel, but you listen, but I don't feel that he will tell you that the State of Ohio has the burden of proving this man's sanity beyond a reasonable doubt, because that isn't the law.

"And if you hear Judge Kimmel tell you from that bench that the State of Ohio must prove that he was sane legally on the day in question beyond a reasonable doubt, then I stand corrected. But, you are not—

"The Court: Counsel approach the bench. (Whereupon, discussion was held at the bench on the record as follows.)

"The Court: It is the Court's position that Mr. Schenck has just made an incorrect statement of the law and I am going to correct it. The State does have the burden of proving the Defendant guilty as to *each element, as well as the issue of sanity, beyond a reasonable doubt, and the jury will be so instructed.* [Emphasis added.] (Whereupon, the discussion at the bench on the record ended.)

"The Court: Ladies and gentlemen of the jury, at this point the Court is in disagreement with Mr. Schenck as to the responsibility of the State of Ohio and their burden of proof. I am not going to get into the charge at this point, but I wish to point out that the State of Ohio must prove the guilt of Mr. Gall as to all of the elements of the crime, the three crimes, *plus the State of Ohio also has the burden of proving the fact that he is sane, and all of the burden carries the evidentiary weight that is described as beyond a reasonable doubt.*" (Emphasis added.)

Thus, during argument at appellant's request the court specifically instructed that the state had the burden of proof on insanity as one of the elements of its case.

This is repeated in the general instruction in which the court incorporated sanity as an element, instructing the jury that the plea of not guilty by reason of insanity "puts in issue all the essential elements of the crime, and in the instant case the issue of sanity." In outlining the elements of the offense of rape, he reminded the jury that the issue on the element of sanity or insanity will carry over to the other offenses. This reminder is repeated in defining insanity.

Toward the close of the general charge, at an interruption, other facets of the submission were discussed, but there was no objection respecting submission of the burden of proof on insanity.

At the close of the general instruction counsel for both sides indicated no further requests.

The record clearly reveals that the trial court instructed counsel and the jury that the burden of proof on sanity was upon the state like every other essential element in the state's case. In doing so the court struggled with the *Robinson* law, which offered little, if any, guide for the form of language in the submission. Though brief, there was nothing inaccurate in this submission. It was essentially correct. If there was any ambiguity, it was the duty of the accused to call it to the attention of the court under Crim. R. 30.

After *Robinson* the Supreme Court in *State* v. *Long* (1978), 53 Ohio St. 2d 91, applied Crim. R. 30 to a R. C. 2901.05(A) instruction and said the plain error rule did not apply unless the outcome of the trial clearly would have been otherwise. There is no indication in the present case that a different form of instruction would have produced a contrary result.

The sixth assignment of error is denied.

At this point we return to the consecutive arrangement designated in appellant's brief.

*Assignment of Error No. 1.*

In the general instruction the court submitted instructions relating to "purposely compel" (rape), "purposely performed" and "for the purpose of depriving" (robbery), but did not provide a separate definition of purpose or intent to do an act. In

the context as used the word (purpose) carried its common, ordinary definition, and the absence of a definition was not a source of prejudicial error. In addition, any further amplification of the word was waived by the failure to specifically request or object under Crim. R. 30.

The first assignment of error is denied.

*Assignments of Error Nos. 2 and 3.*

"The Court erred in not appointing additional psychiatrists or psychologists to examine the defendant on the issue of competency and insanity."

"The Court erred in not ordering further evaluation and accepting the testimony of Dr. Bergman, as to the competency of Eugene Gall."

The issue of sanity or insanity was present in this case from its inception and both parties were given every opportunity and/or assistance in preparation for trial. There is no element of surprise or excuse for delay. Under the circumstances of this case the use of additional psychiatrists or psychologists rests in the discretion of the court under all the circumstances. There was no abuse of discretion in not appointing still more medical witnesses or in permitting the testimony of Dr. Bergman. The two assignments are denied.

*Assignment of Error No. 4.*

"The Court erred in not allowing the defendant to introduce testimony relating to his prior bad acts and that those facts would help to substantiate the insanity defense."

The "bad acts" referred to include prior acts and offenses of rape, kidnapping and murder in Ohio and Kentucky.

The trial judge initially cautioned counsel, and particularly the state, regarding evidence of these collateral matters, as prejudicial to the accused.

In this respect, this assignment and the arguments relating to it are not referenced to any specific objection or ruling by the court. This court is therefore unable to determine with the necessary precision the specific error intended. The defendant took the stand and not only admitted some of the acts with which he was charged but also admitted others as well. In this situation the trial court faced a delicate problem of the extent of the testimony on collateral matters that might seriously prejudice the rights of the accused as a result of his

own choice. With sanity an issue the court could not ignore basic rules and fairness, regardless of the accused's personal choice as to what he chose to go before the jury.

We find no merit to this assignment and, as indicated, no specific error to which this assignment relates.

*Assignment of Error No. 5.*

"The jury's verdict was against the manifest weight of the evidence as to the issue of insanity, in that the defendant was not shown to be sane beyond a reasonable doubt."

There was ample evidence to justify the verdict in this case. Where there is substantial, credible evidence in support of the verdict, it is not the function of the reviewing court to weigh the testimony. This assignment is summarily denied.

*Assignment of Error No. 7.*

"The court erred in not suppressing evidence of the cap and jacket introduced by the prosecutor."

The effort to suppress the cap and jacket was first raised considerably into the trial. The record suggests no surprise or lack of knowledge as to these physical exhibits. The trial judge ruled that the motion to suppress was not timely made because motions to suppress must, under Crim. R. 12(B)(3), be made before trial.

We find no error in this assignment.

*Assignments of Error Nos. 8 and 9.*

"The court erred in not allowing the defendant to individually voir dire the respective jurors, and in conjunction with that, overruling the motion for change of venue."

"The court erred in refusing the defendant access to the minutes of the grand jury relating to the 4 principal witnesses involved."

Within the context of Crim. R. 24(A) or R. C. 2945.27, which was superseded by the rules, there was no violation or abuse of discretion in refusing to permit each juror to be examined separately and apart from the other jurors or in refusing a change of venue. The change of venue question is not pursued in the appellant's brief.

With respect to the ninth assignment, no particularized need was shown and the trial court did not abuse its discretion. *State* v. *Roberts* (1976), 50 Ohio App. 2d 237.

These two assignments are denied.

*Assignment of Error No. 10.*

"The court erred in refusing to submit to the jury lesser included offenses."

This final assignment does not suggest what lesser included offenses could have been submitted or show that any specific offense or offenses were eligible under the evidence for such consideration. It is true that the assertion of an affirmative defense does not in itself preclude submission of lesser offenses, if the testimony justifies such submission. However, lesser offenses must be submitted only when justified by the condition of the evidence. The evidence here—overwhelming and in part admitted—does not justify a reasonable conclusion that any lesser offense could be involved. Robbery is the only lesser offense mentioned in the brief. However, there is no dispute but that a weapon was involved. The fact, if true, that the victim of the aggravated robbery volunteered her property to spare the children from rape does not eliminate the element of aggravation or justify submission of a lesser offense.

The tenth assignment is denied.

The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

KERNS and PHILLIPS, JJ., concur.