**Paul D. DUFFY, Jr.,
Petitioner-Appellant,**

v.

**Dale E. FOLTZ, Respondent-Appellee.**

**No. 84–1869.**

United States Court of Appeals,
Sixth Circuit.

Argued June 12, 1985.

Decided Sept. 13, 1985.

---

Milburn, Circuit Judge, dissented and filed opinion.

Arthur J. Tarnow, argued, Detroit, Mich., for petitioner-appellant.

Timothy A. Baughman, argued, Detroit, Mich., for respondent-appellee.

Before MILBURN, Circuit Judge, and EDWARDS and BROWN, Senior Circuit Judges.

BAILEY BROWN, Senior Circuit Judge.

Appellant, Paul D. Duffy, Jr., appeals the denial of his application for habeas corpus relief by the District Court for the Eastern District of Michigan. Upon consideration, we determine that the district court was in error in denying relief and therefore we reverse.

Duffy was found, upon a plea of not guilty and not guilty by reason of insanity, guilty of rape and kidnapping by a jury in 1974 in a Michigan court. Mich.Comp. Laws §§ 750.520, 750.349. The Court of Appeals of Michigan affirmed the conviction. *People v. Duffy*, 67 Mich.App. 266, 240 N.W.2d 771 (1976). The trial court in 1982 denied on the merits an application, in which the instant federal constitutional contentions were first made, for leave to file a delayed motion for a new trial; in the same year the Michigan Court of Appeals denied on the merits an application for a delayed appeal; and in 1983 the Michigan Supreme Court denied an application for leave to appeal. It appears that Duffy has exhausted his remedies (28 U.S.C. § 2254) in the state courts in two separate ways in that the state courts were presented with a fair opportunity to rule on his federal constitutional claims and, in addition, when he filed his habeas petition, there was not any avenue for further review of the instant

federal constitutional contentions in the state court system. *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). Moreover, Duffy need not show "cause and prejudice" as he would be required to show if there had been a procedural default that was a substantial basis for denial of relief, *Hockenbury v. Sowders*, 620 F.2d 111 (6th Cir.1980), *cert. denied*, 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 367 (1981), or be required to show if the Michigan courts had not had a fair opportunity to correct the claimed federal constitutional error, *Fornash v. Marshall*, 686 F.2d 1179, 1186 (6th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1439, 75 L.Ed.2d 796 (1983), applying, by analogy, *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). The state does not contend that there was a procedural default or that the state courts did not have such an opportunity.

As reflected by the opinion of the Michigan Court of Appeals, *People v. Duffy*, 67 Mich.App. 266, 240 N.W.2d 771 (1976), the state had, on the objective facts, a very strong case against Duffy. He bound and at knife point abducted the female victim from her home, after first entering her yard, he testified, looking for a cat, and drove her to an isolated area and raped her. The local police, who had been alerted by the victim's neighbor, spotted Duffy returning the victim to her home and arrested him after a chase. The case was vigorously defended, however, on the basis of an insanity defense.

At trial, after the state's overwhelming proof as to the abduction and rape by Duffy, followed by Duffy's counsel's opening statement to the jury that Duffy would concede that he abducted and raped the victim and that his sole defense would be that of not guilty by reason of insanity, and after Duffy had in his testimony confirmed the victim's version of the facts and at great length testified about a prior rape he had committed for which he was held in a mental institution for five years, and after one of the two psychiatrists who testified in Duffy's behalf had testified that he was indeed temporarily insane at the time of the alleged offense, the trial judge suggested, in the jury's absence, that the jury be instructed that Duffy conceded that he abducted and raped the victim and his sole defense would be that of insanity. Duffy's counsel agreed to this. The state offered no expert testimony to rebut that of the two experts who testified in Duffy's behalf. Without objection, the trial judge did not instruct the jury on the elements of the crimes of rape and kidnapping, instructed that Duffy admitted the acts alleged, and instructed that its alternatives were to find Duffy "guilty as charged" or "not guilty by reason of insanity." Since Duffy had come forward with evidence of his insanity, the trial court also instructed the jury, which the state agrees is in accordance with Michigan law, that the burden was on the state to prove Duffy's sanity beyond a reasonable doubt. As stated, the jury found Duffy guilty of both crimes.

In the district court, Duffy made two sets of contentions. The first is that, by his counsel's agreeing to the charge to the jury that Duffy conceded the alleged facts as to rape and kidnapping and that his only defense was that of insanity at the time of the alleged offense and by his counsel's agreeing to the charge that the jury's only verdict alternatives were "guilty as charged" or "not guilty by reason of insanity," he was denied his constitutional right to a jury trial and that he was also denied constitutional due process by the failure of the trial court to instruct the jury on the elements of rape and kidnapping. The second set of contentions is that, under the circumstances presented at the trial, Duffy's conviction was a violation of federal due process because, under the proof as presented, Duffy's sanity became an element of the crime charged and that the jury could not within reason find beyond a reasonable doubt that he was sane at the time of the alleged offense.

## I.

As stated, Duffy contends that he was denied a jury trial by his counsel's con-

ceding that he committed the acts as alleged and by the trial court's failure, with Duffy's counsel's agreement, to charge the jury that he might be found "not guilty." He further contends that he was denied due process by the failure of the trial court, with his counsel's agreement, to instruct the jury on elements of the crimes of rape and kidnapping.

It appears to this court that though the foregoing are asserted by Duffy as separate propositions, they raise the same question, which is this: was Duffy deprived of a federal constitutional right to a jury trial and deprived of due process by his trial counsel's conceding, as a trial tactic, that Duffy committed the acts as alleged and contending only that he was "not guilty by reason of insanity."

While, as Duffy asserts, the record does not affirmatively show that Duffy voluntarily and knowingly agreed to stand only on a plea of not guilty by reason of insanity, we note the following. Duffy does not contend that, in making this trial tactic decision, he received ineffective assistance of counsel. Moreover, Duffy does not contend that he did not *in fact* knowingly and voluntarily agree to this trial tactic. Further, Duffy does not even contend that such was not, under the circumstances, the best, indeed the only, trial tactic available. He simply contends that, in a nutshell, he was unconstitutionally denied a jury trial because the record does not affirmatively show that he agreed to his trial counsel's decision.

█ If Duffy's counsel had pleaded him guilty, there being no showing on the record that Duffy agreed thereto, we would have a serious question in view of the holding of the Supreme Court in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Moreover, if Duffy's counsel's opening statement, stipulation and argument to the jury were in fact made without his agreement and if such were a functional equivalent of a guilty plea, we would have a serious question under our decision in *Wiley v. Sowders,* 647 F.2d 642 (6th Cir.), *cert. denied,*

454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981). But Duffy's counsel did not enter a guilty plea for him, and his opening statement, stipulation and argument did not amount to a functional equivalent of a guilty plea because under Michigan law a plea of "not guilty by reason of insanity" is not a guilty plea and an opening statement, stipulation and argument in support of an insanity defense do not amount to a functional equivalent of a guilty plea. As stated by the Michigan Supreme Court in *People v. Martin,* 386 Mich. 407, 192 N.W.2d 215, 225 (1971), *cert. denied,* 408 U.S. 929, 92 S.Ct. 2505, 33 L.Ed.2d 342 (1972):

A plea of not guilty by reason of insanity is not a plea that incriminates. It is just the opposite. It is a special plea in avoidance of the guilty charge.

Accordingly, we conclude that Duffy was not, by use of this trial tactic, deprived of a federal constitutional right to a jury trial or due process.

## II.

Duffy's other contention is that, under the circumstances presented here, his sanity was an element of the crime, that the jury could not, on the proof, within reason find beyond a reasonable doubt that he was sane, and therefore his conviction was in violation of federal due process.

## A.

In *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the Court held:

Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

*Id.* at 364, 90 S.Ct. at 1072.

Moreover, in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Court established, in implementing *Winship,* the standard to be applied in determining whether the evidence in sup-

port of a state court conviction was sufficient to satisfy due process:[1]

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 319, 99 S.Ct. at 2789.

On the other hand, in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the Court held that a state may constitutionally require a defendant to prove an affirmative defense, and this court, following *Patterson,* held that Ohio could constitutionally place the burden on the defendant to prove the affirmative defense of insanity. *Krzeminski v. Perini,* 614 F.2d 121 (6th Cir.), *cert. denied,* 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980).

Thus the question becomes: under the circumstances presented was Duffy's sanity an element of the crime in the sense contemplated by *Winship and Jackson v. Virginia* so that, under federal due process, the state was required to prove Duffy's sanity beyond a reasonable doubt?

Duffy relies on the decision of this court in *Stacy v. Love,* 679 F.2d 1209 (6th Cir.), *cert. denied,* 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982), in which this court held that, since under Tennessee law, where a defendant introduces evidence to support his insanity defense, the state has the burden of proving sanity beyond a reasonable doubt, sanity thereby, *ipso facto,* becomes an "element of the crime" which must, under federal due process, be proved beyond a reasonable doubt. This court noted that due process does not require that the state undertake this burden of proof, but if it does, then due process requires that sanity be proved beyond a reasonable doubt. This court, in the plurality opinion in *Isaac v. Engle,* 646 F.2d 1129, 1135 (6th

Cir.1980) (en banc), *rev'd,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), had so held in a habeas case from Ohio in an analogous context. But the Supreme Court, upon granting review in *Isaac v. Engle,* in an opinion that came down at approximately the same time that this court's opinion in *Stacy* was filed, disagreed with this proposition and reversed this court's decision. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). There the Court said:

> A careful review of our prior decisions reveals that this claim is without merit. Our opinions suggest that the prosecution's constitutional duty to negate affirmative defenses may depend, at least in part, on the manner in which the State defines the charged crime. *Compare Mullaney v. Wilbur, supra, with Patterson v. New York, supra.* These decisions, however, do not suggest that whenever a State requires the prosecution to prove a particular circumstance beyond a reasonable doubt, it has invariably defined that circumstance as an element of the crime. A State may want to assume the burden of disproving an affirmative defense without also designating absence of the defense an element of the crime. The Due Process Clause does not mandate that when a State treats absence of an affirmative defense as an "element" of the crime for one purpose, it must do so for all purposes. The structure of Ohio's Code suggests simply that the State decided to assist defendants by requiring the prosecution to disprove certain affirmative defenses. Absent concrete evidence that the Ohio Legislature or courts understood § 2901.-05(A) to go further than this, we decline to accept respondents' construction of state law. While they attempt to cast their first claim in constitutional terms, we believe that this claim does no more than suggest that the instructions at re-

---

**1.** The standard established by *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), has been applied retroactively to state court convictions. *Pilon v. Bordenkircher,* 444 U.S. 1, 100 S.Ct. 7, 62 L.Ed.2d 1 (1979).

spondents' trials may have violated state law.

*Id.* at 120–21, 102 S.Ct. at 1567–68 (footnotes omitted).

Accordingly, the holding of this court in *Stacy v. Love,* 679 F.2d 1209 (6th Cir.), *cert. denied,* 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982), that the shifting of the burden to the state *ipso facto* makes absence of the affirmative defense an element of the crime is contrary to the Supreme Court's holding in *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). As the Court held, there must be "concrete evidence" that the state legislature or state courts intended this result.

It appears to us, however, that the Supreme Court of Michigan, in its opinion in *People v. Murphy,* 416 Mich. 453, 331 N.W.2d 152 (1982), supplied "concrete evidence" that, under Michigan law, once evidence is introduced in support of an insanity defense, not only does the state have the burden of proving sanity beyond a reasonable doubt, but also sanity becomes an "element of the crime." In this case, Murphy had defended a rape case on the basis of an insanity defense. Murphy contended on appeal that, since he had presented evidence of insanity, the burden had shifted and that the state had not carried its burden of proving sanity beyond a reasonable doubt. In holding that the state had not carried its burden, the court said:

> A defendant in a criminal proceeding is presumed sane. Once any evidence of insanity is introduced, however, the prosecution bears the burden of establishing defendant's sanity beyond a reasonable doubt. *People v. Krugman,* 377 Mich. 559, 563, 141 N.W.2d 33 (1966), *People v. Garbutt,* 17 Mich. 9, 23 (1868). The prosecution does not argue that defendant failed to controvert the presumption of sanity. Thus, defendant's sanity at the time of the crime was as much an element to be proved by the prosecution beyond a reasonable doubt as the other

statutory elements of the offenses charged.

331 N.W.2d at 157.

If the foregoing statement in *Murphy* does not make it clear that the court considered sanity to be an "element of the crime," the Michigan Supreme Court in its opinion expressly so stated in recognizing that the Supreme Court's rulings in *In re Winship* and *Jackson v. Virginia* were applicable in testing the adequacy of the state's proof of sanity.

> Our review of the evidence for sufficiency to support a jury verdict of sanity is governed by the standard announced in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and adopted in Michigan in *People v. Hampton,* 407 Mich 354, 285 N.W.2d 284 (1979), *cert. den sub nom Michigan v. Hampton,* 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 110 (1980).[2] The relevant question is whether, after viewing all of the evidence in the light most favorable to the prosecutor, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson,* 443 U.S. at p. 319, 99 S.Ct. at p. 2789. The former review for *any* evidence to support a jury verdict, on which the prosecutor appears to rest in this case, was discarded in *Jackson* and *Hampton* in favor of a review which gives meaning to the standard of proof beyond a reasonable doubt.

> .    .    .    .    .

> In short, all of the vital evidence in this case pointed towards defendant's insanity at the time of the offense. In protecting the constitutional standard of proof in criminal cases, *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), we conclude that the evidence of sanity offered by the prosecution was insufficient to convince any rational trier of fact that the defendant was sane beyond a reasonable doubt.

331 N.W.2d at 154, 158.

---

**2.** In *People v. Hampton,* the court decided that the trial court should apply the *Jackson v. Vir-* *ginia* standard in ruling on a defendant's motion for a directed verdict of acquittal.

█ Accordingly, we conclude that Duffy's sanity was an element of the crime for federal due process purposes.[3]

## B.

█ We further conclude that, viewing the evidence in the light most favorable to the state, a rational trier of fact could not have found beyond a reasonable doubt that Duffy was sane at the time of the acts involved here.

The trial court instructed the jury that the state bore the burden of showing beyond a reasonable doubt that Duffy was not "temporarily insane." The court defined insanity as a disease of the mind that prevented Duffy from knowing what he was doing or knowing right from wrong or prevented Duffy from having the willpower to resist the impulse to engage in the criminal conduct.

The victim testified as to Duffy's bizarre conduct while she was abducted, including the fact that Duffy seemed to be talking to a third person who was not there.

Duffy testified as to a prior rape committed by him for which he was institutionalized for five years. He also testified as to family pressure (he was married and had a child) because of disagreements with his wife and testified as to an affair carried on with another woman who had had one abortion and was pregnant again, all of which, he testified, was driving him toward another rape or suicide. Duffy had, he testified, been in contact with his treating psychiatrist, Dr. Danto, shortly before he abducted and raped the victim. Duffy testified that a "voice" directed him to commit the rape involved in this case, that he made no effort to hide his identity and that he was bringing the victim to her home when he was apprehended.

Dr. Danto testified that he had been treating Duffy for about a year before the incident and that, in his opinion, Duffy was temporarily insane at the time of this rape as such was defined under Michigan law and in the charge to the jury.

Dr. Tanay, another psychiatrist who examined Duffy, also testified that at the time of this incident Duffy was insane as such was defined under Michigan law and in the charge to the jury.

As stated, the state offered no rebuttal evidence.

The state, arguing in its brief, "to preserve the record," that *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), should be overruled because it was wrongly decided, points to little, if any, evidence in the record that supports its contention that Duffy was sane at the time of this incident. In this connection, the state only points out that Duffy may have used a ruse (looking for a cat) to enter the victim's yard, that he went back to his car and got a knife, that he bound the victim and took her to an isolated area before he raped her, and that he sought to avoid observation while transporting the victim. The state argues that this court can disregard the expert testimony (in "viewing the evidence in the light most favorable to the prosecution," *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. at 2789), but even if this be so, we still have no evidence upon

---

**3.** As indicated by the panel's opinion, we agree with the dissent that Michigan could, without violation of the United States Constitution, not only require a defendant to come forward with evidence of insanity, but also could require a defendant to prove the defense. We further agree with the dissent that Michigan could, upon the defendant's introduction of evidence of insanity, accept the burden of proving sanity beyond a reasonable doubt without thereby making sanity an element of the crime within the meaning of *In re Winship* and *Jackson v. Virginia;* this is the holding of the Supreme Court in *Engle v. Isaac,* 456 U.S. at 120–21, 102 S.Ct. at 1567–68. However, *Engle v. Isaac* also holds that if Michigan not only accepts the bur-

den, but also intends to make sanity an element of the crime, it becomes an element of the crime for constitutional purposes. *Id.* The question, then, is: did Michigan, under the circumstances presented here, intend to make Duffy's sanity an element of the crime? As shown by our quotations from *People v. Murphy,* 416 Mich. 453, 331 N.W.2d 152 (1982), the Michigan Supreme Court clearly recognized that, under the analogous circumstances presented there, sanity was an element of the crime. It did this not only by so stating but, perhaps even more importantly, by expressly recognizing the applicability of *In re Winship* and *Jackson v. Virginia* and that the United States Constitution required proof of sanity beyond a reasonable doubt.

which a jury could within reason find beyond a reasonable doubt that Duffy was sane.

### III.

We recognize that, in determining that the prosecution presented insufficient evidence to support a criminal conviction, the result is that Duffy cannot be tried again under the state's criminal law. Since Michigan, under the circumstances presented here, has clearly made sanity an element of the crime, *Jackson v. Virginia* commands this result. The state can, of course, carry to the U.S. Supreme Court its argument that *Jackson v. Virginia* should be overruled—a decision clearly not within this court's power. Moreover, the state is free, under the doctrine of *Engle v. Isaac*, to alter its rule that, under these circumstances, sanity becomes an element of the crime.

The judgment of the district court is vacated and the cause is remanded to the district court to order appellant's discharge from custody absent further proceedings. In this respect the state would be well advised to review its mental health laws to ascertain what steps can be taken to further institutionalize Duffy under Michigan mental health laws.

MILBURN, Circuit Judge, dissenting.

Since I am unable to agree that Duffy's petition raises a constitutional question, I respectfully dissent.

### I.

Duffy's petition, brought under 28 U.S.C. § 2254, is, of course, cognizable only if Duffy is being held in violation of the Constitution or laws of the United States. The

majority announces today that petitioner's due process rights were violated because the Michigan prosecutor failed to disprove the presence of petitioner's affirmative defense of insanity.[1] My disagreement with this conclusion is twofold. First, to so hold is inconsistent with a well-established line of Supreme Court cases. Second, in my view the holding of *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)—the state's requirement that the prosecution prove the absence of an affirmative defense does not state a constitutional claim—is applicable rather than the dicta relied upon by the majority.

### A.

As noted by the majority, the Supreme Court in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), "explicitly [held] that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary *to constitute the crime with which he is charged.* " 397 U.S. at 364, 90 S.Ct. at 1073 (emphasis supplied). In the progeny of *Winship, Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Court similarly stated that the standard announced— "whether ... *any* rational trier of fact could have found the *essential elements* of the crime beyond a reasonable doubt," 443 U.S. at 319, 99 S.Ct. at 2789 ("any" emphasized in original, other emphasis supplied) —"must be applied with explicit reference to the *substantive elements* of the criminal offenses as defined by state law." 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 (emphasis supplied). Sanity, of course, is neither an essential element nor a substantive element of either rape [2] or kidnapping [3] in Michigan,

---

1. The majority recognizes at 1276, *supra,* that *Stacy v. Love,* 679 F.2d 1209 (6th Cir.), *cert. denied,* 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982) and, of course, this court's opinion in *Isaac v. Engle,* 646 F.2d 1129 (6th Cir.1980) (*en banc* ), *rev'd,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), are inconsistent with the Supreme Court's opinion in *Engle. Stacy* and this court's opinion in *Engle,* however, are the only cases which support the decision announced today.

2. Duffy was convicted of rape under Mich. Comp.Laws Ann. § 750.520:

Sec. 520. Any person who shall ravish and carnally know any female of the age of 16 years, or more, by force and against her will, or who shall unlawfully and carnally know and abuse any female under the full age of 16 years, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years, or if such person was at the time of the said offense a sexually delin-

and petitioner's brief nowhere makes the contention that it is an element of any type. Rather, in Michigan, the defense of insanity is clearly an affirmative defense. Mich. Comp.Laws § 768.20a.

Furthermore, to hold as the majority does is inconsistent with *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), where the court held:

> We thus decline to adopt as a constitutional imperative, operative country-wide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused. Traditionally, due process has required that *only the most basic procedural safeguards be observed;* more subtle balancing of society's interests against those of the accused have been left to the legislative branch. We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. *Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here.*

432 U.S. at 210, 99 S.Ct. at 2327 (emphasis supplied). The *Patterson* court continued and noted that "there are obviously constitutional limits beyond which the States may not go...." *Id.* The extreme examples given by the Court are instructive in the instant case. For example, the Court

noted: " '[I]t is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime.' " *Id.* (brackets in original) (quoting *McFarland v. American Sugar Rfg. Co.*, 241 U.S. 79, 86, 36 S.Ct. 498, 500, 60 L.Ed. 899 (1916)). Concluding on the point, the Court stated that "[l]ong before *Winship*, the universal rule in this country was that the prosecution must prove guilt beyond a reasonable doubt. At the same time, the long-accepted rule was that it was constitutionally permissible to provide that various affirmative defenses were to be proved by the defendant." 432 U.S. at 211, 97 S.Ct. at 2327.

Extending *In re Winship* and *Jackson v. Virginia*, to require that the prosecutor must as a matter of constitutional law prove the absence of the affirmative defense of insanity would go far beyond the "traditional" rule which is applicable here. *See Greider v. Duckworth*, 701 F.2d 1228 (7th Cir.1983) (Judge Posner concurring). As noted, that rule is that due process is intended to protect "only the most procedural safeguards." It is fundamental that defining and enforcing criminal law is a function vested primarily in the states. The holding announced by this court today is an unnecessary "[f]ederal intrusion [which] frustrate[s] both the States' sovereign power to punish offenders and their good faith attempts to honor constitutional rights." *Engle v. Isaac*, 456 U.S. 107, 128, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982).

In fact the holding announced by the majority punishes the State of Michigan for extending criminal procedural protections. As it stands, Michigan law requires that

quent person, may be punishable by imprisonment in the state prison for an indeterminate term, the minimum of which shall be 1 day and the maximum of which shall be life. Such carnal knowledge shall be deemed complete upon proof of any sexual penetration however slight.

**3.** Duffy was convicted of kidnapping under Mich.Comp.Laws Ann. § 750.349:

Sec. 349. CONFINING PERSON AGAINST WILL, ETC.—Any person who wilfully, maliciously and without lawful authority shall forcibly or secretly confine or imprison any oth-

er person within this state against his will, or shall forcibly carry or send such person out of this state, or shall forcibly seize or confine, or shall inveigle or kidnap any other person with intent to extort money or other valuable thing thereby or with intent either to cause such person to be secretly confined or imprisoned in this state against his will, or in any way held to service against his will, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years.

once the defendant overcomes the presumption of sanity "the prosecution bears the burden of establishing the defendant's sanity beyond a reasonable doubt." *People v. Murphy*, 416 Mich. 453, 331 N.W.2d 152, 157 (1982). However, it is clear that, as a matter of constitutional law, had Michigan so decided it could have required the defendant to carry the burden of proving his insanity. *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed.2d 1302 (1952). Similarly, had Michigan required the prosecutor to show defendant's sanity by a preponderance of the evidence, there would, apparently, be no constitutional violation because even under the majority's analysis sanity would not become an "element" of the crime. Furthermore, and even more anomalously, had the State of Michigan simply applied the beyond a reasonable doubt standard but never characterized the shift of burden as an "element" or never subjected the characterization to due process analysis, then, under the majority's analysis, there would be no violation of the federal due process clause. Such a holding, I submit, is not required to protect basic procedural safeguards under the due process clause.

### B.

My second point of disagreement with the majority's constitutional holding is based on my reading of *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). *Engle* was, as the majority notes, a case in which *this court* was reversed after holding that:

> [O]nce a state assumes the burden of proving the absence of an affirmative defense beyond a reasonable doubt, fundamental fairness and therefore due process require it to meet the burden that it chose to assume. From the point of view of fairness and due process, there is no practical difference between requiring a state to prove the elements of crimes beyond a reasonable doubt and requiring it to meet its assumed burden of proving absence of affirmative defenses beyond a reasonable doubt.

*Isaac v. Engle*, 646 F.2d 1129, 1135–36 (6th Cir.1980) (*en banc*), *rev'd*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). In rejecting this analysis the Supreme Court held:

> A State may want to assume the burden of disproving an affirmative defense without also designating absence of the defense an element of the crime. *The Due Process Clause does not mandate that when a State treats absence of an affirmative defense as an "element" of the crime for one purpose, it must do so for all purposes.* The structure of Ohio's Code suggests simply that the State decided to assist defendants by requiring the prosecution to disprove certain affirmative defenses. *Absent concrete evidence* that the Ohio Legislature or courts understood § 2901.05(A) to go further than this, we decline to accept respondents' construction of state law. While they attempt to cast their first claim in constitutional terms, we believe that this claim does no more than suggest that the instructions at respondents' trial may have violated state law.

*Engle v. Isaac*, 456 U.S. at 120, 102 S.Ct. at 1568 (emphasis supplied) (footnotes omitted). The majority now holds that a result different from *Engle* must follow because, in Michigan, unlike Ohio, there is concrete evidence that the government's burden of proving sanity is an element of the crime.

I disagree that *Engle* is materially distinguishable. There is little, if any, more "concrete evidence" present in the instant case than was present in Ohio at the time of *Engle v. Isaac*. In the instant case, the majority finds the requisite "concrete evidence" in the following language of the Michigan Supreme Court:

> [D]efendant's sanity at the time of the crime was as much an element to be proved by the prosecution beyond a reasonable doubt as the other statutory elements of the offenses charged.

*People v. Murphy*, 416 Mich. 453, 331 N.W.2d 152, 157 (1982). However, when *Engle v. Isaac* was decided by the Supreme Court, there was almost identical language

from the Ohio courts dealing with Ohio Rev.Code Ann. § 2901.05(A) at issue in *Engle:*

> The record clearly reveals that the trial court instructed counsel and the jury that the burden of proof on sanity was upon the state like every other essential element of the state's case.... [T]here was nothing inaccurate in this submission.

*State v. Gall,* 65 Ohio App.2d 57, 415 N.E.2d 1008, 1012 (1980). Nevertheless, as has been pointed out, the Supreme Court, two years after *Gall,* in *Engle,* held that Isaac's claim based on Ohio Rev.Code Ann. § 2901.05(A) failed to do "more than suggest [a violation of] state law." *Engle v. Isaac,* 456 U.S. at 121, 102 S.Ct. at 1568.

Furthermore, as is clear from the language of the *Engle* Court emphasized above, the state must do more than designate the "absence of an affirmative defense as an 'element' of the crime for one purpose." 456 U.S. at 120, 102 S.Ct. at 1568. Thus, concrete evidence that the state considers the government's burden an "element" of the crime is not enough. Rather, before there is a constitutional claim there must, at least, be concrete evidence that the state decided to do more than "assist defendants by requiring the prosecution to disprove certain affirmative defenses." *Id.* I fail to see any, much less "concrete" evidence on this fact. Thus, not only is this case not materially distinguishable from *Engle,* but furthermore, the language relied upon by the majority does not suggest a different result from *Engle.*

## II.

In summary, in my view the proper analysis in the instant case requires that *Patterson v. New York, supra,* be read in conjunction with *Engle v. Isaac, supra.* If read together the following rule can be distilled from those cases: When a state voluntarily assumes the burden of disproving an affirmative defense which has traditionally been placed on the defendant—absent either a violation of a basic procedural safeguard or concrete evidence that the state has decided to do more than require the government to disprove the defense—the question of whether the prosecutor has carried the burden is one of state law. As applied to Duffy's case, the above rule would require that Duffy's petition for a writ of habeas corpus be denied and the judgment of the district court be affirmed, and I would so hold.